**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**Holding a Criminal Term**

**Grand Jury Sworn in on May 11, 2006**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **CRIMINAL NO.** |
| | ) | |
| **v.** | ) | **GRAND JURY ORIGINAL** |
| | ) | |
| **JOSE MARIA CORREDOR IBAGUE,** | ) | **VIOLATIONS:** |
| **also known as Boyaco** | ) | |
| **also known as Chepe,** | ) | **18 U.S.C. § 2339B(a)(1)** |
| **also known as Don Jose,** | ) | **(Conspiracy to Provide Material** |
| | ) | **Support or Resources to a** |
| **EDILMA MORALES LOAIZA,** | ) | **Foreign Terrorist Organization)** |
| **also known as Maria Ofelia,** | ) | |
| **also known as La Negra** | ) | **18 U.S.C. § 2339B(a)(1)** |
| **also known as Marucha,** | ) | **(Providing Material Support or** |
| **also known as Carolina,** | ) | **Resources to a Foreign Terrorist** |
| **also known as Carolina Yanave Rojas,** | ) | **Organization)** |
| | ) | |
| **Defendants.** | ) | **18 U.S.C. § 2** |
| | ) | **(Aiding and Abetting and** |
| | ) | **Causing an Act to be Done)** |

**I N D I C T M E N T**

The Grand Jury charges that:

**COUNT ONE**

At all times relevant to this Indictment:

**A. Background**

1.    The Revolutionary Armed Forces of Colombia – an English translation of the Spanish name of the group, "Fuerzas Armadas Revolucionarias de Colombia" (commonly known as and referred to hereafter as the "FARC") – is an armed and violent organization in the Republic of Colombia.

2.    The FARC is engaged, and has been since its inception in 1964, in armed conflict

against the government of the Republic of Colombia, which is a constitutional, multi-party democracy. It seeks to destabilize all levels of the Colombian government by means of violence, including murders and hostage takings, threats of violence, and other terrorist related activities. The FARC's activities throughout Colombia have caused hundreds of civilian deaths and injuries.

3.    The FARC has been strongly anti-American, characterizing American citizens as "military targets," and has engaged in violent acts against Americans in Colombia, including murders and hostage takings.

4.    The FARC is a designated foreign terrorist organization ("FTO"), having been so designated pursuant to Title 8, United States Code, Section 1189, by the Secretary of State of the United States, initially in October 1997, and most recently on October 11, 2005. As a result of this designation, it is unlawful for persons subject to the jurisdiction of the United States to provide material support and resources to the FARC.

5.    The FARC relies on a support network of individuals with access to Colombia's metropolitan areas, such as Bogotá and Villavicencio, and on those individuals involved in trafficking narcotics who have access to weapons, foreign currency, and other supplies. Narcotics traffickers deliver FARC produced or controlled cocaine to neighboring countries, and transport firearms, foreign currency, and other materials such as communications equipment (including satellite telephones) from other countries and urban areas of Colombia into the rural regions of Colombia in which the FARC operates. These individuals assist the FARC by utilizing their drug networks to procure these items and transport them to the FARC via clandestine airstrips located in Colombia and Venezuela, trucks, and in river boats navigating remote jungle rivers that traverse rural areas of Colombia and neighboring countries.

6.    Defendants JOSE MARIA CORREDOR IBAGUE, also known as BOYACO, CHEPE or DON JOSE (hereafter "BOYACO"), and EDILMA MORALES LOAIZA, also known as MARIA OFELIA, LA NEGRA, MARUCHA, CAROLINA or CAROLINA YANAVE ROJAS (hereafter "LA NEGRA"), are residents and citizens of Colombia who supplied the FARC with weapons and munitions, and who procured communications equipment for the FARC from persons located in the United States.

7.    On or about October 1, 2004, BOYACO was arrested in the Republic of Venezuela on an outstanding United States drug trafficking warrant.  He remained detained in Venezuela until he escaped from custody on or about June 11, 2005.

**B.  Jurisdiction and Venue**

8.    All events alleged in this Indictment took place in the Republic of Colombia, outside the United States, that is, not within any state or district.  Accordingly, the offenses charged are within the extraterritorial jurisdiction of the United States pursuant to Title 18, United States Code § 2339B(d), and pursuant to Title 18, United States Code § 3238, within the venue of the United States District Court for the District of Columbia.

**C.  The Charges**

**CONSPIRACY TO PROVIDE MATERIAL SUPPORT
TO A DESIGNATED FOREIGN TERRORIST ORGANIZATION
(REVOLUTIONARY ARMED FORCES OF COLOMBIA)**

9.    From on or about sometime in 2002, the exact date being unknown to the Grand Jury, and continuing thereafter up to and including on or about October 15, 2006, in the Republic of Colombia, defendants BOYACO and LA NEGRA, and co-conspirators not indicted herein, did knowingly combine, conspire, confederate and agree, together, with each other, and with others

known and unknown to the Grand Jury, to provide material support and resources to an FTO, namely the FARC.

## OBJECT OF THE CONSPIRACY

10.    It was a purpose and object of the conspiracy for the defendants and their co-conspirators to assist the FARC by procuring and supplying them with weapons, ammunition, and communications equipment, such as satellite telephones.

## MANNER AND MEANS

11.    The manner and means by which the defendants, and their unindicted co-conspirators, both known and unknown to the Grand Jury, sought to accomplish the object of the conspiracy included, among other things, the following:

(a)    Members of the conspiracy found buyers for and then transported by air for profit, via clandestine airstrips located in Colombia and Venezuala, cocaine produced in southeast Colombian departments including, but not limited to, Meta, Guaviare and Vaupes.

(b)    Members of the conspiracy, in partial payment for the cocaine, received and surreptitiously delivered weapons, such as AK-47 and AR-15 assault type weapons, and ammunition to FARC members in the jungle areas of southeast Colombia.

(c)    Members of the conspiracy used profits from the sale of cocaine to procure communications equipment, such as satellite telephones and SIM cards, and other supplies for the use of the FARC.

## OVERT ACTS

12.     In furtherance of the conspiracy and to effect its object, one or more of the co-conspirators committed and caused to be committed at least one of the following overt acts, among others:

### *Provision of Firearms and Ammunition*

(a)     From on or about sometime in 2002, and continuing through on or about October 15, 2006, BOYACO, together with co-conspirators known and unknown to the Grand Jury, regularly provided the FARC with weapons including rifles, rifle scopes, pistols, shotguns, bomb fuses, and ammunition in the departments of Guaviare and Vaupes.

(b)     On or about sometime in 2002, BOYACO delivered approximately 70 AK-47 assault-type weapons to the FARC at a clandestine airstrip located in Caruru, department of Vaupes.

(c)     On or about sometime in 2004, BOYACO delivered approximately 55 AK-47 assault-type weapons and 25 Beretta handguns to the FARC at a clandestine airstrip located in Pacoa, department of Amazonas.

(d)     On or about sometime in 2005, LA NEGRA contacted a known FARC member and informed the member that she had weapons ready to be delivered to the FARC.

(e)     On or about sometime in 2005, a short time after events described in overt act (d), BOYACO delivered approximately 15 AR-15 assault-type weapons and two Mini FAL machine guns to a FARC commander, whose identity is known to the Grand Jury, in Pacoa, department of Amazonas.

(f)     On or about July 3, 2006, LA NEGRA by use of a satellite telephone sought to acquire approximately 300 boxes of ammunition for the FARC in Bogota, Colombia, by informing a co-conspirator, whose identity is not known to the Grand Jury, that she was awaiting the shipment

of what she referred to as "300 units of seed".

*Provision of Communications Equipment*

(g)    From in or about February 2003, and continuing through in or about September 2004, a co-conspirator, whose identity is known to the Grand Jury, provided satellite telephones and SIM cards to BOYACO, who in turn provided them to the FARC, including a high ranking FARC member, whose identity is known to the Grand Jury.

(h)    In or about May 2003, BOYACO introduced a co-conspirator, whose identity is known to the Grand Jury, to a high ranking FARC member, whose identity is known to the Grand Jury, for the purpose of allowing that FARC member to purchase SIM cards directly from the co-conspirator.

(i)    On or about December 5, 2005, BOYACO sought to acquire, and arranged to purchase, satellite telephones and SIM cards that BOYACO and LA NEGRA intended to use to further activities related to the FARC, which BOYACO described as his "large organization".

(j)    On or about February 13, 2006, in Bogota, Colombia, BOYACO purchased communications equipment, including two satellite telephones and two computers, and directed that they be delivered to a FARC collaborator, whose identity is known to the Grand Jury, who later provided this communications equipment to BOYACO.

**(Conspiracy to Provide Material Support or Resources to a Designated Foreign Terrorist Organization**, in violation of Title 18, United States Code, Section 2339B(a)(1))

## COUNT TWO

### MATERIAL SUPPORT TO A DESIGNATED

## FOREIGN TERRORIST ORGANIZATION
## (REVOLUTIONARY ARMED FORCES OF COLOMBIA)

1.      The Grand Jury realleges and incorporates by reference herein paragraphs 1 through 8 and 12 ((a) through (j)) of Count One of this Indictment.

2.      Beginning on or about sometime in 2002, and continuing until on or about October 15, 2006, in the Republic of Colombia, defendants BOYACO and LA NEGRA, did knowingly provide and attempt to provide material support and resources to a designated foreign terrorist organization, namely the FARC, in that they procured and transported weapons and communications equipment to that foreign terrorist organization.

(**Providing Material Support or Resources to a Designated Foreign Terrorist Organization** and **Aiding and Abetting and Causing an Act to be Done**, in violation of Title 18, United States Code, Sections 2339B(a)(1) and 2)

A TRUE BILL

FOREPERSON

Attorney of the United States in
and for the District of Columbia